E-FILED
Thursday, 30 July, 2026  09:29:40 AM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

CODY JOHNSON,
    Plaintiff,

v.

    Case No. 4:24-cv-04125-JEH

GRANT JAMES, *et al.*,
    Defendants.

## Order

Plaintiff filed a Complaint under 42 U.S.C. § 1983 alleging Defendants violated his First and Fourteenth Amendment rights by opening his legal mail on February 4, 2022, July 14, 2023, and August 3, 2023, while he was a detainee at the Hancock County Jail ("HCJ"). (Doc. 1). This matter is now before the Court on Defendants' Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and Local Rule 7.1(D). (Doc. 55). For the reasons stated below, Defendants' Motion is GRANTED.

## I

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*,

1

477 U.S. 242, 255 (1986). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted).

## II

The Court finds the following material facts. During the relevant period—February 4, 2022 through August 3, 2023—Plaintiff was a detainee at the HCJ awaiting trial. (Doc. 55-16). On January 23, 2025, Plaintiff was found guilty of murder, home invasion, and aggravated discharge of a firearm in *People v. Johnson*, No. 20-CF-125. *Id.*

Defendants Cole Cornwell, Grant James, Nicole Johnson, and Austin Shuman were employed as civilian jailers at the HCJ. *Id.* at ¶ 4. Civilian jailers are non-sworn law enforcement professionals responsible for maintaining the safety and security of the detention facility, including the supervision and care of inmates. *Id.*

Defendant Chris Becker was a civilian dispatcher. *Id*. Civilian dispatchers handle 911 calls, communicate with deputies, and prepare civil process paperwork for service. *Id.*

## A

On February 4, 2022, Plaintiff received legal mail consisting of a letter from his criminal defense attorney, Dennis Woodworth, dated January 17, 2022 and a summary of two interviews that Illinois State Police ("ISP") investigators conducted of Plaintiff's co-defendant, Michael Garcia, on December 23, 2020 and January 27, 2021. (Doc. 55-3 at ¶ 3; Doc. 55-5 at 5:10–8:3; Doc. 57-1).

2

On February 4, 2022, Plaintiff filed a grievance regarding the opening of his legal mail. Plaintiff stated Defendant Cornwell gave him the mail on February 4 and told him that Defendant Shuman had opened it. (Doc. 55-4 at 7:20-11:7, 10:21–11:16, 20:20–21:15; Doc. 55-8). HCJ Administrator Kelly Twaddle responded to Plaintiff's grievance on February 7, 2022, denying the grievance and explaining that, although Defendant Shuman inadvertently slit open the envelope, the mail was not removed from its envelope or viewed. (Doc. 55-2 at ¶¶ 6-8; Doc. 55-8).

According to Defendant Shuman's affidavit, Defendant Shuman inadvertently opened the envelope, but he did not remove or read the mail because he realized the sender identified on the envelope was Plaintiff's criminal defense attorney. (Doc. 55-9 at ¶ 3). Plaintiff testified that he does not know whether Defendant Shuman read any of the contents of the opened legal mail on February 4, 2022. (Doc. 55-4 at 13:6-21).

According to Defendant Cornwell's affidavit, Defendant Cornell did not open or read Plaintiff's legal mail, nor was he responsible for Defendant Shuman opening the mail. (Doc. 55-10 at ¶¶ 4-7; Doc. 55-5 at 12:4-13). Defendants Shuman and Cornwell did not disseminate any information contained in Plaintiff's legal mail to anyone. (Doc. 55-9 at ¶ 6; Doc. 55-10 at ¶ 7; Doc. 55-4 at 11:17-12:4, 13:16-14:6; Doc. 55-5 at 14:24-16:15).

During discovery in Plaintiff's criminal case, the Hancock County State's Attorney's Office ("HCSAO") received (1) Mr. Garcia's recorded interviews from December 23, 2020 and January 27, 2021 from the ISP, and (2) transcripts of the interviews from Plaintiff's attorney, Mr. Woodworth. (Doc. 55-3 at ¶¶ 4-6; Doc. 55-4 at 39:20–40:16; Doc. 55-7 at ¶ 2(a)–(b)).

**B**

On July 14, 2023, Plaintiff received legal mail containing a letter from Mr. Woodworth dated July 10, 2023 and a copy of the transcript of Mr. Garcia's

interview on January 27, 2021. (Doc. 55-5 at 17:15-19:9; Doc. 57-2). Plaintiff testified that Defendant Johnson gave him the mail on July 14, 2023 and told him that Defendant Becker mistakenly opened it when he was going through two days' worth of incoming civil process mail. (Doc. 55-4 at 32:16-33:15).

According to Defendant Becker's affidavit, Plaintiff's mail was mistakenly placed with incoming civil process mail from the court by whoever sorted the mail that day. (Doc. 55-12 at ¶ 3). Defendant Becker inadvertently opened the envelope containing Plaintiff's legal mail on July 14, 2023, but he did not remove the mail from the envelope or read it before realizing the sender was Plaintiff's attorney. *Id.* Defendant Becker then gave the envelope to Defendant Johnson, who immediately delivered it to Plaintiff. *Id.* at ¶ 4. According to Defendant Johnson's affidavit, she did not open or read Plaintiff's legal mail, nor was she responsible for Defendant Becker opening the mail. (Doc. 55-13 at ¶¶ 3-4, 7).

According to an affidavit from Hancock County State's Attorney Bobi James ("SA James"), the ISP provided the HCSAO with a recording of Mr. Garcia's interview on January 27, 2021, and Mr. Woodworth later provided a copy of the transcript during the discovery phase of Plaintiff's criminal case. (Doc. 55-3 at ¶¶ 4-6).

## C

On August 3, 2023, Defendant James opened an envelope addressed to Plaintiff from the Central District of Illinois Clerk. (Doc. 55-4 at 43:20-44:17; Doc. 55-14). The envelope contained a Civil Rights Complaint Packet with instructions on how a prisoner can file a civil complaint in federal court. (Doc. 55-4 at 44:2-17; Doc. 57-3).

4

## III

## A

As a preliminary matter, the Court notes that Plaintiff's Response does not comply with this Court's Local Rules. (Doc. 71). Local Rule 7.1(D)(2)(b) provides that a response to a summary judgment motion must state, in separate subsections: undisputed material facts, disputed material facts, disputed immaterial facts, undisputed immaterial facts, and additional material facts. Local Rule 7.1(D)(2)(b)(6) cautions, "[a] failure to respond to any numbered fact will be deemed an admission of the fact." Likewise, Federal Rule of Civil Procedure 56(e)(2) provides that when a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may "consider the fact undisputed for the purposes of the motion." FED. R. CIV. P. 56(e)(2).

On January 6, 2026, the Clerk sent Plaintiff a Notice informing him that his Response must comply with Federal Rule of Civil Procedure 56(c) and Local Rule 7.1(D) and provided Plaintiff with a copy of both rules. (Doc. 58 at p. 1). The Notice instructed Plaintiff that if he disagreed with a fact, he was required to "provide affidavits, exhibits, or documents to support why [he] disagree[d] with it." *Id.* The Notice also warned Plaintiff if he failed to do so, the Court may "consider the facts asserted in the summary judgment motion as undisputed." *Id.*

In Plaintiff's Response, he indicated whether Defendants' material facts were "true" or "false" by creating a chart and using a checkmark to indicate which facts were "true" and a dash to indicate which facts were "false." (Doc. 71 at p. 3). Plaintiff did not explain why he believed certain material facts were "false" nor did he provide any citations to the 207 pages of exhibits he attached to his Response. *Id.* at pp. 3, 6-212.

"[I]t is not the role of the court to parse the parties' exhibits to construct the facts. . . . It simply is not the court's job to sift through the record to determine

whether there is sufficient evidence to support a party's claim." *Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 972 (N.D. Ill. 2014) (citing *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006)). Plaintiff's Response does not comply with Rule 56(c) or Local Rule 7.1(D). Therefore, the Court deems Defendants' undisputed material facts to be admitted. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 (7th Cir. 2019) (approving district court's strict compliance of Rule 7.1(D) against a *pro se* litigant); *see also White v. Felchner*, SEM-19-3181, 2021 WL 3223067, at *2 (C.D. Ill. July 29, 2021) (facts deemed admitted).

**B**

Defendants argue they are entitled to summary judgment because there is no evidence that opening Plaintiff's legal mail frustrated his ability to pursue a non-frivolous legal claim, and any right of access claim based on Plaintiff's criminal case is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Second, Defendants argue there is no evidence that they acted recklessly or intentionally. Third, Defendants argue that only three isolated incidents are insufficient to constitute a violation of Plaintiff's rights. Fourth, Defendants Cornwell and Johnson, who delivered Plaintiff's mail, argue they were not personally involved in opening Plaintiff's mail. Fifth, Defendant James argues the mail from the Clerk on August 3, 2023 was not "legal mail." Finally, Defendants argue they are entitled to qualified immunity. (Doc. 55).

Instead of directly addressing Defendants' arguments, Plaintiff argues his claims have merit because Defendants' insurance company is liable for any judgment for compensatory damages under the Illinois Tort Immunity Act, and Defendants had a duty to comply with the "Employee Ethics Act" and the HCJ Inmate Rules. (Doc. 71 at p. 4).

"While prisoners have First and Fourteenth Amendment rights as to their mail, prison officials have the right to examine that mail to ensure that it does not

contain contraband." *Fogle v. Champaign Cnty. Sheriff's Off.*, No. 18-CV-2062-JBM, 2018 WL 3120016, at *1 (C.D. Ill. June 25, 2018) (citing *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005) (internal citations omitted)). "An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts." *Kaufman*, 419 F.3d at 685-86 (citing *Rowe v. Shake*, 196 F.3d 778, at 782 (7th Cir. 1999)). "[W]hen a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside the inmate's presence." *Kaufman*, 419 F.3d at 686 (citations omitted).

In the Seventh Circuit, there must be a "showing of hindrance" to a "prisoner's efforts to pursue a legal claim." *Guajardo-Martinson*, 622 F.3d 801, 805 (7th Cir. 2010) (citation omitted). Thus, "[a]n inmate has no constitutional claim for interference with legal mail unless he can demonstrate that a non-frivolous legal claim has been frustrated or impeded." *Lofquist v. Cecil*, No. 20-169-RJD, 2020 WL 7074950, at *5 (S.D. Ill. Dec. 3, 2020) (citing *Lewis v. Casey*, 518 U.S. 343, 352–53 (1996)). To satisfy this requirement, "actual prejudice to specific litigation must be shown." *Lofquist*, 2020 WL 7074950, at *5 (citing *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992) (right of access claim "require[s] a showing of prejudice" to pending or contemplated litigation)).

## 1

The Court can easily dispense of the claim related to the mail from the Central District of Illinois Clerk, which Defendant James opened on August 3, 2023. (Doc. 57-3). "[P]rison employees can open official mail sent by a court clerk to an inmate without infringing on any privacy right." *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). "The Illinois Administrative Code 525.140(d) specifically identifies mail from clerks of courts as 'nonprivileged mail.'" *Fogle*, 2018 WL 3120016, at *2. The envelope Defendant James opened, which contained a blank

Civil Rights Complaint Packet, was not "legal mail." *See Fogle*, 2018 WL 3120016, at \*2 (citing *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987)). The Civil Rights Complaint Packet is a public document and was available for download on the Court's online docket. *See, e.g., Johnson v. Garcia, et al.*, Case No. 4:25-cv-04140-SLD, Doc. 21. Therefore, Defendant James did not violate Plaintiff's constitutional rights and is entitled to summary judgment.

**2**

Next, the Court will address the legal mail Plaintiff received on February 4, 2022 and July 14, 2023. On February 4, 2022, Defendant Shuman opened legal mail, which contained a letter from Plaintiff's criminal defense attorney and summaries of two interviews that ISP investigators conducted of Plaintiff's co-defendant, Mr. Garcia, on December 23, 2020 and January 27, 2021. (Doc. 57-1). Defendant Shuman argues he inadvertently slit open the envelope before realizing it was from Plaintiff's attorney. Defendant Cornwell delivered the mail to Plaintiff and informed him Defendant Shuman accidentally opened it.

On July 14, 2023, Defendant Becker opened Plaintiff's legal mail containing a letter from Plaintiff's attorney and a copy of the transcript of Mr. Garcia's interview on January 27, 2021. (Doc. 57-2). Defendant Becker argues he mistakenly opened the legal mail as he was going through incoming civil process mail. Defendant Johnson delivered the mail to Plaintiff and informed him Defendant Becker accidentally opened it. Defendants Shuman, Cornwell, Becker, and Johnson argue they did not remove the mail from the envelopes or read the mail.

Regardless of whether Defendants Shuman, Cornwell, Becker, and Johnson intentionally opened or read Plaintiff's legal mail, Defendants are entitled to summary judgment because Plaintiff provided no evidence to demonstrate that opening his legal mail on February 4, 2022 and July 14, 2023 frustrated or impeded his criminal case or any other non-frivolous legal claim. Absent such evidence,

Plaintiff "has no constitutional claim for interference with legal mail." *Lofquist*, 2020 WL 7074950, at *5 (dismissing interference with legal mail claim where plaintiff did not allege that the destruction of his mail "caused any detriment to his ability to litigate the matter"); *see Sanders v. Salemi*, No. 10 C 7203, 2012 WL 353844, at *3 (N.D. Ill. Feb. 1, 2012) (rejecting interference with legal mail claim where plaintiff "has not suggested" that the denial of his legal mail "resulted in actual frustration of a potentially meritorious legal claim").

Moreover, SA James confirmed that the HCSAO received the recordings of Mr. Garcia's interviews and the transcripts during the discovery phase of Plaintiff's criminal case. (Doc. 55-3 at ¶¶ 4-6; Doc. 55-7 at ¶ 2(a)-(b)). There is no evidence that Plaintiff's criminal proceedings or trial was affected by the Defendants' actions or that Defendants hindered Plaintiff's ability to pursue any legal claim or defense. *See Kaufman*, 419 F.3d at 686 (affirming summary judgment in interference with legal mail claim where plaintiff offered no evidence that defendants' actions affected his ability to litigate any matter).

Additionally, Plaintiff's claim is barred by the doctrine established in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a prisoner is barred from pursuing a § 1983 claim when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Here, Plaintiff has not shown that his conviction was invalidated, through habeas proceedings or otherwise, and cannot pursue relief challenging his conviction and seeking damages for the alleged denial of access to the courts. *See Hoard v. Reddy*, 175 F.3d 531, 534 (7th Cir. 1999) (*Heck* bars a prisoner from seeking damages for denial of access to the courts until conviction is overturned or invalidated); *see also Mason v. Gimber*, No. 3:17-CV-01025, 2020 WL 3268654, at *6–8 (S.D. Ill. June 17, 2020) (finding that plaintiff's First and Fourteenth Amendment denial of access to the courts claim was barred by *Heck*). Therefore,

9

the Court finds that Defendants Shuman, Cornwell, Becker, and Johnson are entitled to summary judgment.

**3**

Having found that Defendants did not violate Plaintiff's constitutional rights, the Court need not address whether Defendants are entitled to qualified immunity. *See Johns v. Tinsley*, No. 16-1106-JES, 2018 WL 10811472, at *5 (C.D. Ill. Mar. 7, 2018) (citing *Van den Bosch v. Raemisch*, 658 F.3d 778, 787 n. 9 (7th Cir. 2011)). The Court also does not address whether opening Plaintiff's legal mail on February 4, 2022 and July 14, 2023 was too isolated and sporadic to support a right of access to courts claim, if Defendants' conduct was intentional or reckless, and if Defendants Cornwell and Johnson were personally involved in opening Plaintiff's legal mail.

**IV**

For the reasons stated, *supra*:

(1)     Defendants' Motion for Summary Judgment [55] is GRANTED. Plaintiff's claims based on the First and Fourteenth Amendment as to his criminal proceedings are dismissed without prejudice as barred by *Heck v. Humphrey* and its progeny. As such, Defendants Grant James, Christopher Becker, Nicole Johnson, Cole Cornwell, and Austin Shuman are DISMISSED WITHOUT PREJUDICE.  Plaintiff takes nothing. Each side is to bear their own attorney's fees, costs, and expenses. The Clerk is directed to enter judgment and close this case.

(2)     Should a party file a motion for reconsideration which is subsequently denied by the Court, the party who filed the motion will be responsible for the attorney's fees of the opposing party related to their response to the motion for reconsideration.

(3)     Plaintiff remains responsible for paying any remainder of the $350 filing fee. (d/e 7/16/2024).

(4)    If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).

(5)    To proceed *in forma pauperis* on appeal, Plaintiff must file a motion to proceed on appeal *in forma pauperis* and identify the issues he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. Fed. R. App. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (An appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff chooses to appeal, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: July 30, 2026

s/Jonathan E. Hawley
U.S. District Judge

11